IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| TODRICK MORRIS, #0854732 | § | |
| VS. | § | CIVIL ACTION NO. 6:21cv440 |
| SULEIMAN ALIU, ET AL. | § | |

REPORT AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE

Plaintiff Todrick Morris, a prisoner confined at the Memorial Unit within the Texas

Department of Criminal Justice (TDCJ), proceeding *pro se* and *in forma pauperis*, filed this civil

rights lawsuit complaining of alleged violations of his constitutional rights. The case was referred

to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and

recommendations for the disposition of the case.

The present Report concerns Defendants' motion for summary judgment, (Dkt. #57),

Plaintiff Morris's response, (Dkt. #59), Defendants' reply, (Dkt. #60), and Morris's sur-reply,

(Dkt. #61). For reasons explained below, the Court recommends that Defendants' motion be

granted, in part, and denied in part.

**I. Morris's Complaint**

Morris sues Sergeant Aliu, Officer Enabulele, and Officer Nosegbe for allegedly violating

his Eighth Amendment rights while imprisoned at the Coffield Unit in August 2021, (Dkt. #9, pg.

4). He claims that all three Defendants violated his rights through the use of excessive force, and

that Defendants Aliu and Nosegbe failed to protect him (or failed to intervene).

Specifically, Morris maintains that the incident occurred on August 22, 2021, on the

restrictive housing wing, P2 Section L-Wing Cell #105, at approximately 9:45 PM during the

passing of chow to the prisoners. When Defendant Enabulele arrived at Morris's cell to pass out

his dinner meal, Morris explains that he "unaggressively [sic] placed my right arm/hand on the already open (unsecured because it was broken) trayslot/foodslot and began to calmy inquire Officer Enabulele whom was standing behind a sliding shield (which policy instructs officials to use for staff/offender protection) as to why I was being fed a regular meal which contains beans/legumes" when he had an allergy to beans and legumes, which was a confirmed by medical, (Dkt. #9, pg. 4). He also contends that he inquired why he was not "receiving a shower." *Id*.

At that point, Defendant Enabulele "became agitated and started cursing and threatening" him. Morris states that Enabulele remarked that he was "tired" of Morris complaining and that he "was gonna teach" him a lesson and "keep" Morris's mouth shut. *Id*. at pg. 5. Enabulele "removed his CDP chemical agent can[n]ister from his waistline and motioned as if he was going to spray me while I was not being aggressive or threatening at all," (Dkt. #9, pg. 5). Approximately ten minutes later, Defendants Aliu and Nosegbe arrived on L-wing and "stood in between" the shower at the front of the wing and his cell, while Enabulele was still standing behind the shield. *Id*. Enabulele, with Aliu and Nosegbe "looking on," then walked from behind the shield to directly in front of Morris's cell while his right arm/hand was in the slot—and began to strike him with a "large steel/metal tray carrier" on his right arm/hand three times. *Id*. Morris states that he felt "excruciating pain."

He claims that Defendant Aliu came over to his cell to assist Enabulele, who struck him an additional time. Nosegbe "looked on." Aliu and Enabulele then walked to the shower area, at which point Nosegbe then came to Morris's cell and started "kicking the open/broken trayslot/food slot on my cell door yelling "We told you" and walked away. *Id*. at pg. 5. He alleges that all three Defendants "walked away" without initiating the Incident Command System. *Id*.

2

Morris explains that he pulled his "limp" right hand/arm inside his trayslot and began to ask for medical assistance, noticing that he was bleeding profusely from his right hand. He contends that he was left inside his cell—bleeding—got approximately thirty minutes until Captain Turney arrived at his cell.  Morris notified Turney that he had been assaulted with a tray carrier by Aliu, Enabulele, and Nosegbe, who had severely injured him. *Id*. at pg. 6. He highlights that he "personally showed Captain Turney" his injured and bleeding hand/arm, and states that Turney witnessed a "puddle of blood" on his cell's floor. Turney "walked away" and left the wing.

Approximately one and a half hours later, Turney, Lieutenant Tieman and Officer Ajayi arrive at his cell with a video camera. Morris remarked that he needed medical attention, and Turney searched him and placed him in hand restraints, (Dkt. #9, pg. 6). Upon his arrival at the medical department, Nurse Fields assessed Morris was assessed on camera; Morris showed Fields his injuries on his right hand/arm and "briefed the video camera of those injuries which consisted of lacerations" to his right elbow/arm, right index and middle fingers along with swelling. *Id*. Lieutenant Tieman "took photos of the injuries" to his right hand/arm while Nurse Fields contacted the on-call medical provider. While waiting for the provider, Morris explained to Turney the incident—who personally told him that "he had already reviewed the pod video surveillance and it confirmed that Sgt. Aliu and Officer Enabulele had assaulted [him] with a tray carrier and that he had contacted the Duty Warden (Major John Ragsdale) and notified him what happened." *Id*.

Nurse Fields informed Turney that the provider "had given orders" for Morris to be taken to the local hospital for further evaluation. Morris insists that he personally articulated on camera that he was attacked and assaulted with a tray carrier, at which point the "force incident was terminated and the video camera was shut off." *Id*. at pg. 7. Prison officials then transported him to the Palestine Regional Medical Center on the morning of August 23, 2021.

3

At the hospital, medical officials examined Morris. Sutures were placed in his right middle and index fingers; X-rays results confirmed the existence of fractures to his right middle and index fingers, which were then placed in a splint, (Dkt. #9, pg. 7). Officials also scheduled Morris to see a hand specialist or plastic surgeon at Hospital Galveston, who subsequently determined that he needed "surgery to repair" his fingers. Doctors performed the surgery y on September 1, 2021, and a surgical pin was placed inside his right middle finger. *Id*. Morris explains that he suffers from permanent "deformities" to his right hand/fingers and severe loss of range of motion.

Morris seeks $25,000 in compensatory damages, and $10,000 in punitive damages from each defendant. He also seeks court costs and declaratory relief that the actions committed are unconstitutional. *Id*. at pg. 4.

## II. Defendants' Motion for Summary Judgment

Defendants maintain, (Dkt. #57), that Morris is not entitled to declaratory relief and that his claims against them in their official capacities are without merit. Defendants further argue that Morris failed to demonstrate a constitutional violation because they did not apply excessive force. They further argue that his claims concerning the alleged failure to intervene during the force incident are without merit. Finally, Defendants invoke qualified immunity—asserting, in part, that their actions were, overall, reasonable.

## III. Morris's Response, Defendants' Reply, and Morris's Sur-Reply

In response, (Dkt. #59), Morris argues that Defendants' motion for summary judgment should be rejected. He essentially refutes Defendants' articulation of the facts surrounding the use of force. Specifically, he insists that he never attempted to assault anyone and that he "never possessed or launched a projectile at Defendant Enabulele or anyone else" and that no weapons were found near his cell. Morris further states that he never grabbed Enabulele vest.

Highlighting Defendants' assertion that Defendant Nosegbe "utilized three kicks" towards Morris, Morris contends that he "never had control of Defendant Enabulele and Defendant Nosegbe did actually kick [him] three times on his right arm/hand after Defendant Enabulele had struck [him] on his right arm/hand with the food tray carrier," (Dkt. #59, pg. 4). He also refutes Defendants claim that they initiated the "Incident Command System" during the incident. Morris insists that Defendants Aliu and Nosegbe knew that the force being used by Enabulele with the tray carrier was excessive and a constitutional violation—and had "a reasonable opportunity to prevent the harm caused" to him, but they "chose not to act."

Defendants filed a reply, (Dkt. #60), asserting that Morris failed to raise a material fact dispute. They argue that "Turney watched the footage in order to give his statement for the use of force investigation," rendering Morris's challenge to Turney's recollection unavailing. Defendants also insist that Morris's self-serving statements do not defeat their properly supported motion for summary judgment.

In his sur-reply, (Dkt. #61), Morris contends that Turney contradicted himself several times throughout his statements throughout the force investigation. He states that his claims and statements defeat Defendants' motion for summary judgment because they raise genuine disputes of several material facts.

## IV. Summary Judgment Evidence

Defendants attached several exhibits to their motion for summary judgment:

**Exhibit A**:    Office of the Inspector General (OIG) records for Morris, with business record affidavit;

**Exhibit B**:    Relevant Use of Force records, with business records affidavit; and

**Exhibit C**:    Photograph of Defendant Enabulele's hand

Plaintiff has attached exhibits to his pleadings, many of which are the same records submitted by Defendants.

1. The Use-Of-Force Report

An administrative Use-of-Force Report, (Dkt. #57-2, Defendants' Exhibit B), was created following the incident. According to the Report, on August 22, 2021, on L-Wing, Morris

> Officer Lucky Enabulele CO4 was escorting the pill nurse on L-Wing 1 Row. Inmate Morris, Todrick TDCJ #854732 had taken control of the rolling shield mounted to rail over the cell fronts which is used to protect staff and inmates from assault. Inmate Morris grabbed the shield through the open food tray slot of L Wing 105 cell. Inmate Morris tied a sheet through the open foot slot to the shield which prevented Officer Enabulele from safely going down the run. Officer Enabulele escorted the nurse off the wing and left the shield in control of Inmate Morris. Officer Enabulele called for assistance and returned to the shield to untie the sheet. Officer Enabulele was holding an empty food tray carrier as he had been feeding prior to the arrival of the pill nurse. Sergeant Suleiman Aliu and Officer Nicholas Nosegbe arrived to assist Officer Enabulele. Officer Enabulele was behind the shield protecting himself from the assault. As Officer Enabulele reached around the shield inmate Morris launched a homemade projectile towards Officer Enabulele striking him in the hand. Officer Enabulele freed the shield and stepped towards Inmate Morris in response to the assault. Inmate Morris grabbed the stab-resistant vest of Officer Enabulele. Officer Enabulele slammed the food tray carrier onto the arms of Inmate Morris to free himself. Sergeant Aliu began swinging the rolling shield back and forth to break the sheet line holding the shield in place. Officer Nosegbe utilized three kicks to the arm and hand of Inmate Morris. While striking with the food tray carrier, Officer Enabulele hit himself in the bridge of the nose. Inmate Morris released Officer Enabulele's vest. Sergeant Aliu broke the shield free and escorted Officer Enabulele off the wing behind the shield.

Dkt. #57-2, pg. 21. Sergeant Aliu then initiated the "Incident Command System" for a staff assault and escorted Enabulele to the infirmary, revealing "lacerations on his hand and nose." *Id.*

The Report further highlights that Captain Turney arrived on L-Wing 1 row to evaluate Morris, witnessing a small puddle of blood in front of L-105 cell. Morris complained that "his finger had been struck and was bleeding," and Turney called for a video camera. Turney then conducted a strip search of Morris, and no contraband was discovered; another officer arrived with the video camera and began recording, (Dkt. #57-2, pg. 21).

Turney then "placed hand restraints through a front handcuff belt due to a medical pass requiring inmate Morris to be handcuffed in the front only," which were applied "without incident." *Id*. He was escorted to the infirmary without incident, where Nurse Fields conducted a force physical screening. She noted a small laceration on Morris's right arm at the elbow—and lacerations with protruding tissue on the pads of the middle and index finger of the right hand. *Id*. Fields cleansed the wound, applied gauze, and determined that Morris "needed emergency transport to Palestine Regional Medical Center for further treatment and evaluation." *Id*. Medical officials diagnosed Morris with "a broken middle finger and received 10 sutures to the middle finger and 1 to the index finger to close the wounds." *Id*. Prison officials conducted a search of Morris's cell, where no weapons were located. The summary concludes with a remark that "Officer Enabulele received a PERS-325 violation 24b Provoked Unnecessary Use of Force." *Id*. The evidence includes a photograph of Enabulele's injured hand, which reveals a small bleeding laceration. *Id*. at pg. 29 (Exhibit C).

 2. OIG Records

TDCJ's Office of Inspector General (OIG) conducted an investigation after Morris raised allegations of assault. The inspector noted that no video was available, but that it reviewed medical records stemming from the incident. Hospital notes confirmed that Morris "was treated for minor injuries on 08/23/2021, indicating Inmate Morris had acute moderately displaced mildly angulated f[r]acture of the right third middle phalanx and the second distal phalanx," (Dkt. #57-1, pg. 16). The inspector contacted Captain Turney, who explained that he watched the video of the incident—witnessing Enabulele "on L-Wing attempting to use the slide shield while conducting his task of feeding the inmates." *Id*. As Enabulele was trying to untie the shield, Turney stated,

"an unknown object could be seen lunging towards this officer through from Inmate Morris's cell." *Id*.

Further, Turney "stated Officer Enabulele immediately reacted by using the food tray carrier and striking the area of the food tray slot for inmate Morris's cell door," and also remarked that "he was not able to clearly see if Inmate Morris's arm was on the food tray slot." *Id*. at pg. 17. Turney was also unable to remember "exactly how many times Officer Enabulele struck the food tray slot, but that it was only a few times and he stopped himself." *Id*. Finally, Turney explained that Aliu responded to the scene, "but was only seen attempting to free the slide shield, not assault Inmate Morris as he claims." *Id*. The inspector found that the "investigation [did] not support Inmate Morris's allegations as stated in this correspondence," and that no further investigations would be conducted.

**V. Legal Standards**

A court shall grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P.  In determining whether there is a genuine dispute of a material fact, the court must examine the evidence and inferences drawn therefrom in the light most favorable to the nonmoving party.  *See S.E.C. v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1994). Summary judgment is appropriate "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."  *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). "Material facts are those that might affect the outcome of the suit under the governing law." *Crostley v. Lamar Cnty., Tex.*, 717 F.3d 410, 422 (5th Cir. 2019) (internal citation and quotations omitted).

The Fifth Circuit has held that summary judgment disposition is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions.  *See Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987).  It is not the function of the trial judge—in ruling on a motion for summary judgment—to weigh the evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence.  *Id*. at 567 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

If the movant satisfies its initial burden of demonstrating the absence of a material fact dispute, then the non-movant must identify specific evidence in the summary judgment record demonstrating that there is a material fact dispute concerning the essential elements of its case for which it will bear the burden of proof at trial. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The non-movant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Util., Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988).

To carry this burden, the non-movant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). All reasonable inferences are drawn in favor of the non-moving party, but the non-moving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only "a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007); *Miller v. Graham*, 447 F. App'x 549, 551 (5th Cir. 2011); *Chacon v. York*, 434 F. App'x 330, 332 (5th Cir. 2011). "Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation" will not survive summary judgment. *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir.

9

2016). Rather, the non-movant "must point to specific evidence in the record demonstrating a material fact issue" at the summary judgment stage. *See Mitchell v. Mills*, 895 F.3d 365, 270 (5th Cir. 2018). The non-movant cannot rest upon mere allegations or "denials of the adverse party's pleading." *See U.S. v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001).

When qualified immunity is invoked, as is here, "only evidence—not argument, not facts in the complaint—will satisfy" the burden of proof necessary to defeat summary judgment. *See Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) (internal citation omitted). Once the movant asserts immunity, the burden then shifts to the plaintiff to rebut it with more than conclusory allegations, unsubstantiated assertions, or speculation. *See Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003); *see also Miller v. Graham*,447 F. App'x 549, 551 (5th Cir. 2011) ("Miller has not overcome Graham's assertion of qualified immunity because he presented nothing but conclusory allegations and unsubstantiated assertions to assert his claim").

## VI. Discussion and Analysis

A review of the summary judgment evidence, viewed in the light most favorable to Morris, demonstrates that the evidence before the Court could lead to different factual findings and conclusions. Because there are genuine issues of material fact, Defendants' motion should be denied in part.

### A. Excessive Force Under the Eighth Amendment

It is well-established that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment. *See Hudson v. McMillian*, 503 U.S. 1, 4 (1992). Because prison officials, when confronted with prison disturbances, have the difficult job of balancing the need to maintain and restore discipline, the core question in determining whether the force used against an inmate was applied in a good-faith effort to maintain or restore discipline inside the

prison or, conversely, whether the force was applied maliciously and sadistically, for the very purpose of causing harm.  *Id*. at 7; *see also Whitley v. Albers*, 475 U.S. 312, 320 (1986) ("But, in making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used.").

With those concerns at the forefront, the Supreme Court held that in determining whether a prison official acted maliciously or sadistically to cause an unnecessary and wanton infliction of pain, courts should consider: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response.  *Hudson*, 503 U.S. at 7; *see also Baldwin v. Stadler*, 137 F.3d 836, 839 (5th Cir. 1998).  Each factor is neither exclusive nor determinative, as each case must be judged on its own facts.  *Baldwin*, 137 F.3d at 839.

### 1. Extent of the Injury Suffered

Morris contends that he suffered significant injuries stemming from the force incident—injuries to his right arm and hand. He states that he received sutures to his right middle and index fingers, suffering fractures requiring reconstructive surgery and "surgical pinning." Morris explains that he also sustained a "right elbow contusion," and currently suffers from permanent deformities and loss of function, (Dkt. #59, pg. 7).

While a minor, insignificant injury does not preclude the finding of an excessive force violation, the Fifth Circuit has repeatedly emphasized that an inmate must have suffered more than a *de minimis* injury.  *See Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999). There is no

requirement that the injury be significant, serious, or more than minor. *See Monroe v. Melder*, 247 F.3d 241, 2001 WL 43566 at *3 (5th Cir. 2001) ("[T]he law of this Circuit is that to support an Eighth Amendment excessive force claim[,] a prisoner must have suffered from the excessive force a more than *de minimis* physical injury, but there is no categorical requirement that the injury be significant, serious, or more than minor.") (internal citation and quotations omitted). While the plaintiff need not show serious injury, the extent of the injury may supply insight as to the amount of force applied. *Cowart v. Erwin*, 837 F.3d 444, 453 (5th Cir. 2016).

The Supreme Court has held that the crux of an excessive force claim does not hinge solely on the quantum of the sustained injury, but rather, "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). In *Wilkins*, the Court reversed the Fourth Circuit's dismissal of Wilkins's claim of excessive force, wherein the Fourth Circuit found that Wilkins' injuries—a bruised heel, back pain, increased blood pressure, migraine headaches, dizziness, and psychological trauma—stemming from his allegations that he was punched, kicked, kneed, choked, and body slammed by prison officials were *de minimis*. *Id*.

Here, the records reflect—and Defendants admit—that Morris suffered injuries. Morris attached the Force Injury Report, in which prison officials documented Morris's injuries after the force incident consisting of "open wounds to both fingers with underlying tissue protruding through the wound," swelling, and lacerations, (Dkt. #59-17). The Report shows that a medical provider was contacted, and that Morris was then transported to a local hospital. *Id*. The summary

judgment evidence shows that Morris suffered several injuries from the force incident requiring, at the very least, transport to the local hospital room. This factor weighs in favor of Morris.

### 2. The Need for the Application of Force

The next factor is the need for the application of force. Morris argues that force was unnecessary—as he maintains that he was "inside a secured cell but with a broken food tray slot not being physically aggressive at all inquiring about his allergy meal and daily shower when he was assaulted with a weapon by Defendants," (Dkt. #59, pg. 7). Defendants, conversely, maintain that Morris placed his arm inside the food tray slot, deliberately stopping the rolling shield with a tied sheet through the open slot; they argue that once Enabulele attempted to free the rolling shield, Morris launched a projectile at Enabulele that injured him and grabbed his vest. Because Enabulele perceived a threat, Defendants state that force became necessary.

Defendants rely on the Use-of-Force Report, Exhibit B, in arguing that force was necessary. Evidence produced in connection with a summary judgment motion, however, must also be admissible at trial. *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1024 (5th Cir. 1995); *Nolen v. Corinthian Colleges, Inc.*, 2009 WL 10700095, at *6 (W.D. Tex. Mar. 26, 2009). While admissible evidence may be submitted in an inadmissible form at the summary judgment stage, the proposed evidence must ultimately be admissible at trial. *See Donalson v. McLeaish*, No. 22-40757 (5th Cir. Dec. 18, 2023). Affidavits must be based on personal knowledge and admissible facts; portions of an affidavit that are conclusory, contain inadmissible hearsay, or are not based on the affiant's personal knowledge may be stricken. *Id*.; *see also* Fed. R. Civ. P. 56(e).

Evidence consisting of hearsay, general conclusions, and speculation is not competent summary judgment evidence. *See Okoye v. Univ. of Tex. Houston Health Sci. Center*, 245 F.3d 507, 510 n.5 (5th Cir. 2001) ("Because these statements are hearsay, they are not competent

summary judgment evidence."); *see also Walker v. SBC Servs., Inc.*, 375 F. Supp.2d 524, 535 (N.D. Tex. 2005) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence."). The Federal Rules of Evidence define hearsay as a statement that "the declarant does not make while testifying at the current trial or hearing" that "a party offers in evidence to prove the truth of the matter asserted in the statement." *Smith v. Palafox*, 728 F. App'x 270, 276 (5th Cir. 2018) (citing FRE 801(c)).

Here, much of the contents of the Report are hearsay. For example, Defendants state that Officer Turney viewed the surveillance footage of the incident—who observed Morris launching a projectile. Defendants note this out-of-court statement to prove that force was necessary, which is hearsay. *See* Fed. R. Evid. 801(c). While Defendants submitted the Report as part of TDCJ's business records, the custodian's sworn affidavit covers the records themselves—not Turney's statements within the Report. *See* Fed. R. Evid. 803(6); *Fowler v. Smith*, 68 F.3d 124, 127–28 (5th Cir. 1995) (excluding proffered witness affidavit that relied on inadmissible hearsay). Witness statements within the Report—particularly about the contents of the unavailable video—are hearsay, which is not competent summary judgment evidence. Defendants have not shown that an exception applies. This factor is therefore inconclusive, favoring neither Morris nor Defendants.

### 3. Relationship Between the Need of Force and the Amount of Force Used

The next *Hudson* factor is the relationship between the need of force and the amount of the force used. In analyzing any excessive force claim, the court must examine the relationship between the amount of force used—which may be constitutionally permissible—and the context in which that force was employed. *See Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996) ("The amount of force that is constitutionally permissible, therefore, must be judged by the context in

which that force was used."). In other words, the inquiry becomes whether the force used upon Morris was excessive to any need for force.

As mentioned, the evidence does not contain video footage to confirm or refute the parties' contentions. While Defendants insist that force was necessary because Defendant Enabulele perceived a threat after Morris tied a sheet to the rolling shield and launched a projectile at him, the statements about the contents of the video footage are hearsay. Statements about what the footage depicted cannot be considered. Defendants state that "the force used was commensurate with the need for force," but material issues of fact exist regarding whether there was a need for force—and, because there is no video in this case, the record is silent on the amount of force used in comparison to any need for force. As with factor two, this third factor is inconclusive and favors neither party.

### 4. The Threat Reasonably Perceived by the Responsible Officials

Next, the court examines the threat reasonably perceived by prison officials. Defendants argue Defendant Enabulele perceived a threat as a result of Morris's actions; conversely, Morris insists that he did not launch a projectile and did not grab Enabulele's vest. Nothing in the record confirms nor refutes these allegations. Once again, Defendants' reliance on Captain Turney's account of the contents of the video to analyze the *Hudson* factors is misplaced because the statements are hearsay. Consequently, this factor is also inconclusive.

### 5. Efforts Made to Temper the Severity of a Forceful Response

The final *Hudson* factor concerns efforts made to temper the severity of a forceful response. Defendants state that they called the Incident Command System (ICS) to temper the severity of a forceful response, while Morris insists ICS was never called. The record does not resolve this dispute.

Defendants claim that their use of force on Morris, in this instance, "was not malicious or sadistic, but rather it was a use of force to restore order and discipline," (Dkt. #57, pg. 9). While the summary judgment and pleadings reveal that Morris suffered several injuries as a result of a force incident, the evidence sheds no light on the need for force, the context in which the force was deployed, or the amount of force applied in comparison to any need for force. For those reasons, material fact issues remain, and summary judgment is inappropriate.

### B. Bystander Liability

Morris maintains that Defendants failed to protect him through a theory of bystander liability. Specifically, he contends that Defendants Aliu and Nosegbe were present when Enabulele hit his right arm/hand several times with the tray carrier, but chose not to act. Defendants argue that Morris's claims are insufficient—as mere presence at the scene of an excessive force incident is insufficient. *See Brown v. Wilkinson Cnty. Sheriff Dep't.*, 742 F. App'x 883, 884 (5th Cir. 2018).

To state a claim for bystander liability under section 1983, Morris must show that the Defendant (1) knew another Defendant was violating his constitutional rights; (2) was present at the scene of the constitutional violation; (3) had reasonable opportunity to prevent the harm; and (4) chose not to act. *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). Courts must also consider whether the Defendant "acquiesced in" the alleged constitutional violation. *Id.*; *see also Randall v. Prince George Cnty., Md.*, 302 F.3d 188, 204 n.24 (4th Cir. 2002) ("The rationale underlying the bystander liability theory is that a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer.").

Here, viewing the allegations and summary judgment evidence most favorably to Morris, the evidence raises a fact issue as to whether Defendants Aliu and Nosegbe "had a reasonable

opportunity to realize the excessive nature of the force and to intervene to stop it." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). In other words, fact issues remain concerning whether Defendants Aliu and Nosegbe "functionally participated" in the alleged unconstitutional acts. *See, e.g.*, *Austin v. City of Pasadena, Tex.*, 74 F.4th 312, 331 (5th Cir. 2023) ("We have held that officers have a reasonable opportunity to intervene if they are present at the scene and that they violate their duty to intervene if their conduct demonstrates they acquiesced to the unconstitutional conduct engaged in by others.").

Here, Morris maintains that Defendants Aliu and Nosegbe "looked on," and that Nosegbe started assisting Defendant Enabulele in striking and smashing his right arm several more times. He also maintains that Defendant Nosegbe participated by kicking his arm/hand through "the open/broken tray slot" three times, (Dkt. #9, pg. 5). He essentially maintains that Defendants "acquiesced in" the alleged excessive force, which the record does not resolve. *Id*. Material issues of fact remain concerning whether Defendants Aliu and Nosegbe had reasonable opportunity to realize any excessive nature of the force and did not take reasonable measures to protect Morris. Summary judgment is not appropriate.

C. Qualified Immunity

Defendants invoke qualified immunity, maintaining that their "actions were, overall, reasonable." However, the Fifth Circuit has held that where a genuine issue of material facts exists, summary judgment on the issue of qualified immunity is inappropriate unless the plaintiff's version of the facts do not implicate clearly established law.  *See Goodson v. City of Corpus Christi*, 202 F.3d 730, 739 (5th Cir. 2000); *see also Mesa v. Prejean*, 543 F.3d 264, 269 (5th Cir. 2008).

17

The doctrine of qualified immunity protects government officials from liability for monetary damages in their individual capacities insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Thompson v. Mercer*, 762 F.3d 433, 436-37 (5th Cir. 2014). Claims of qualified immunity require a two-step analysis: First, the court determines whether a constitutional right would have been violated on the facts alleged and, second, whether the constitutional right was clearly established at the time of the alleged violated. *Kitchen v. Dallas Cnty.*, 759 F.3d 468, 476 (5th Cir. 2014). Importantly, even if the official's conduct violated a clearly established constitutional right, the official is nonetheless entitled to qualified immunity if his or her conduct was objectively reasonable. *See Jones v. Collins*, 132 F.3d 1048, 1052 (5th Cir. 1998).

After the defendants properly invoke qualified immunity, the plaintiff then bears the burden to rebut its applicability. *Kovacic v. Villareal*, 628 F.3d 209, 211 (5th Cir. 2010). Such a rebuttal requires showing that all reasonable officials—similarly situated—would have known that the defendant's actions violated the Constitution. *See Tamez v. Matheny*, 589 F.3d 764, 770 n.2 (5th Cir. 2009); *Thompson v. Upshur Cnty.*, 245 F.3d 447, 460 (5th Cir. 2001). Conclusory allegations are insufficient to overcome the qualified immunity defense. *Williams-Boldware v. Denton Cnty., Texas*, 741 F.3d 635, 643-44 (5th Cir. 2014).

Here, Morris's allegations—if proven—demonstrate a potential constitutional violation for the excessive use of force and bystander liability during the force incident. The law on these matters were clearly established at the time of the 2020 use-of-force incident and reasonable prison officials would know that the use of excessive force upon a prisoner—and failing to intervene when given the opportunity to do so—would violate clearly established constitutional principles. *See Austin*, 74 F.4th at 331 ("Hale is clearly established law that provides fair notice to officers of

18

their duty to intervene, rather than to acquiesce, in the unconstitutional conduct of others."). In arguing that their actions were "overall reasonable," Defendants rely on witness statements concerning the contents of the unavailable video footage, which are not competent summary judgment evidence. If several issues of material fact exist, as do here, then the Court cannot determine whether Defendants' actions were legally reasonable. Because disputes of material fact exist in this case, Defendants failed to show that they are entitled to qualified immunity. *See Hope v. Pelzer*, 536 U.S. 730, 736-37 (2002).

To the extent that Morris sues Defendants for damages in their official capacities, the Court notes that the Eleventh Amendment bars recovering section 1983 money damages from officers in their official capacities.  *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (explaining that the Fifth Circuit has "twice held that the Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity.").  Morris's claims against Defendants in their official capacities are without merit and will be dismissed.

Finally, Defendants assert that Morris's request for declaratory relief is without merit because it contemplates past conduct. *See Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). While the *Ex parte Young* doctrine provides a narrow exception to Eleventh Amendment immunity for claims against a defendant in his official capacity, the doctrine does not permit "declarations involving past conduct." *See Edelman v. Jordan*, 415 U.S. 651, 664-68 (1974); *Rio Aqueduct & Sewer Auth. v. Matcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Here, as Defendants highlight, Morris seeks a declaration that Defendants' actions in the past were unconstitutional.  Such request is impermissible and should be dismissed.

## VII. Conclusion

Material issues of fact exist in this case with respect to both Morris's claims of alleged excessive force against Defendants Enabulele, Aliu, and Nosegbe, and his claims regarding bystander liability against Defendants Aliu and Nosegbe. Disputes remain concerning whether force was necessary and whether the force deployed was excessive to any need for force. Moreover, fact issues remain concerning whether Defendants Aliu and Nosegbe—upon arriving at the scene to assist Enabulele—had a reasonable opportunity to realize any excessive nature of the force but failed to stop it, or whether they acquiesced in the conduct. Summary judgment on Morris's claims is inappropriate.

<u>RECOMMENDATION</u>

For these reasons, it is recommended that Defendants' motion for summary judgment, (Dkt. #57), be granted, in part, and denied in part. The motion should be granted to the extent that Plaintiff's request for declaratory relief and claims against Defendants in their official capacities are dismissed with prejudice. Finally, in all other respects, Defendants' motion for summary judgment should be denied. Plaintiff's claims of excessive force and bystander liability will remain before the Court.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v.*

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 31st day of January, 2024.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE